THE STATE OF MARYLAND *vs.* SCRIBNER, and STATE *vs.* BARKER.—*June*, 1830.

By the *Act of* 1826, *ch.* 251, declaring that "It shall not be lawful for any person within this State, to have in possession any ticket of any lottery, not granted or permitted by this State, with intent to sell, negotiate or dispose of the same, to sell, negotiate, or advertise in any way whatever, any *such* ticket or part of a ticket, &c." it was the great object of the legislature to prevent the sale of unauthorised tickets, and for that purpose the law prohibited both the possession of such tickets with intent to sell, and the selling of them :· HELD, therefore, that the word "*such*," did not refer to the possession of the seller, as part of the description of the ticket which it would be unlawful to sell, for that would legalize the selling of tickets by any person, who at the time of the sale had not possession, and defeat the obvious intent of the law.

In an indictment under the above Act of Assembly, the lottery ticket or part of a ticket should be set out—the sale of only such tickets, as are not authorised by the State, is prohibited, and it would be proper that the ticket should be set out, that the Court might see whether it were a ticket, the sale of which was authorised or prohibited.

In all cases of larceny, very particular descriptions of the goods taken have never been considered necessary, and the description given in the law which enacts the offence in statutable larcenies, has in general been deemed sufficient—this doctrine is founded partly on the fact that the prosecutor is not considered as in the possession of the article stolen, and is not therefore enabled to give a minute description ; and principally because notwithstanding the general description, it is made certain to the Court from the face of the indictment, that a crime has been committed, if the facts be true.

ERROR to *Baltimore* City Court.

The indictment in the first case stated, "that *Samuel Scribner*, late of the said city, a dealer in lottery tickets, on the 7th day of May, in the year 1828, with, &c., at, &c., did sell to a certain *Nathaniel F. Downing*, within this State, a certain ticket, being then and there part of a lottery ticket of a certain lottery, then and there called the *Union Canal* Lottery, fourth class, for 1828, and then and there numbered 11, 25 and 33, and which said lottery was not then and there of a lottery granted, or authorised by this State, contrary to the form of the Act of Assembly in

such case, made and provided, and against the peace, government and dignity of the State." The *second* count stated "that the said *Samuel Scribner,* late of, &c., on the 7th day of May, in the year 1828, with, &c., at, &c., did negotiate with a certain *Nathaniel F. Downing,* one quarter ticket of a certain lottery, called the *Union Canal* Lottery, fourth class, for the year 1828, which said quarter ticket, was then and there a part of a lottery ticket, of the lottery aforesaid, numbered 11, 25 and 33, and was then and there of a lottery not granted, or authorised by this State, contrary, &c." Third *count* "that the said *Samuel Scribner,* late, &c., on the 7th day of May, 1828, with, &c., at, &c., was concerned with a certain other person, to the jurors unknown, in negotiating a part of a ticket, to wit, one quarter of the ticket, numbered 11, 25 and 33, of a certain lottery, then and there called the *Union Canal* Lottery, fourth class, for the year 1828, which said lottery then and there was not granted or authorised by this State, contrary, &c." The defendant pleaded not guilty, and there was a special verdict which stated the facts of the case, but which need not be repeated here, further than that the paper sold by *Scribner* was as follows: "*E pluribus Unum,* No. 1, Policy of Insurance—Sir, please transfer to order of ———, that part of the policy of insurance of No. 1, effected at your office, on my account, which relates to, and insures the payment of such prize as may be drawn to quarter 11, 25, 33, as therein named, in *Union Canal* Lottery, 4th class, for 1828. *S. Scribner,* 182. *D. D. Arden, Washington City.*"

A motion was then made, on behalf of the said *Scribner,* in arrest of judgment, which stated among other reasons, that the writing charged to be negotiated by the traverser, and that given in evidence to the jury, are neither of them set forth in the indictment, and because the indictment does not charge the lottery ticket, or part of a lottery ticket therein mentioned, to have been in the possession of the traverser, nor is there any such fact found by the jury.

The City Court, (BRICE, Ch. J., M'MECHEN and NIS-BET, A. J.) sustained the motion in arrest.

The indictment in the *second* case charged "that *Ephraim Barker*, late of the city aforesaid, a dealer in lottery tickets, on the 26th day of May, in the year 1828, with, &c., at, &c., did sell to a certain *Nathaniel F. Downing*, within this State, a certain ticket, being then and there part of a lottery tick-et, of a certain lottery, then and there called the *Grand Consolidated* Lottery, sixth class, for the year 1828, and then and there numbered 26, 39 and 44, and was then and there of a lottery not granted, or authorised by the laws of this State, contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, gov-ernment, and dignity of the State." The second *count* charged "that the said *Ephraim Barker*, late, &c., on the 26th day of May, 1828, with, &c., at, &c., did negotiate with a certain *Nathaniel F. Downing*, one quarter ticket of a certain lottery, called the *Grand Consolidated* Lottery, sixth class, for the year 1828, which said quarter ticket, was then and there part of a lottery ticket of the lottery aforesaid, numbered 26, 39, 44, and was then and there of a lottery not granted or authorised by this State, contrary, &c. concluding as the first count. Third *count,* "That the said *Ephraim Barker*, late, &c., on the 26th day of May, 1828, with, &c., at &c., was concerned with a certain other person, to the jurors unknown, in negotiating a part of a lottery ticket, to wit: one quarter of the ticket numbered 26, 39, 44, of a certain lottery, then and there called, the *Grand Consolidated* Lottery, sixth class, for the year 1828, which said lottery, was not then and there authorised, or granted by this State, contrary," &c. concluding as the first count.

To this indictment the defendant, *Barker, demurred,* and the City Court ruled the demurrer good, whereupon, the present writs of error were sued out by the State.

The State of Maryland *vs.* Scribner, and State *vs.* Barker.—1830.

These causes came on to be argued together, before BUCHANAN, Ch. J., EARLE, STEPHEN, and ARCHER, J.

*Taney* (Att'y Gen'l.) and *Gill,* for the State, contended,

1. That the paper writing set forth in the special verdict is a lottery ticket in effect.

2. That in an indictment for selling a lottery ticket, it is not necessary to set out such ticket. They referred to the act of 1826, *ch.* 251, by which they said three distinct offences were created, and prohibited.

1. The being in possession of a ticket of an unauthorised lottery, with intent to sell. 2. The actually selling of such a ticket, and 3. The being concerned with any other person in such sale. The Legislature intended to put down the sale of these unauthorised tickets; and they forbid not only the being in possession with intent to sell, but the sale of them, even through the intervention of a third person, and though the seller might not be in the possession of them. The object of the Legislature was two-fold; the one was to protect our citizens from the hazards and losses of adventuring in distant lotteries, and the other to increase the revenue derived from the sale of domestic tickets. Upon the subject of the interpretation of penal laws, they referred to 5 *Wheat.* 76, 94, 96. *Cox Digest,* 641, *sec.* 32, 33. They referred also to the Act of 1819, *ch.* 163. In the case against *Scribner,* the City Court decided, that the question whether the paper was a ticket, or not, was a question of law. They referred to *Johnson's* Dictionary, definition of ticket, to show that the paper set out in the special verdict, is a lottery ticket. To show that the ticket need not be set out in the indictment, they cited, 2 *Harr. and Gill,* 407. They referred also to *U. States vs. Gooding,* 12 *Wheat.* 474, 476, the act of 1809, *ch.* 138, *sec.* 6. 1 *Stark. Ev.* 217.

*Mitchell* and *Gwynn,* for the defendants in error, contended, 1. That the question to be decided is, whether it is

lawful to transfer the policy of a ticket, when the assignment is not to be made in the State.   The policy they said was effected beyond the jurisdiction of the State, and the transfer was equally beyond it.   The holder of a lottery ticket, and the holder of a policy, look to different securities; the first looks to the manager of the lottery; the latter to the underwriter.   The assignor of a policy, guaranteeing the payment of a prize, has no interest in the ticket.   They insisted, that a law prohibiting an act, not *malum in se,* cannot be said to be evaded.   Where the thing is indifferent in itself, the forbidding act can be extended no farther than its very letter will carry it.   The principles of criminal justice should be so clearly established, as that whilst the citizen may abstain from what it forbids, he may enjoy what it permits.   The question then, is, what does the Legislature forbid ?   They say you shall not have a foreign ticket in your possession, and that you shall not sell *such ticket.*   The word such, means a foreign ticket in possession of the vendor.   The law does not say, you shall not sell foreign tickets at all, but that you shall not sell them whilst you are in possession.   *U. States vs. Gooding,* 12 *Wheat.* 476.   The word such applies to the whole description, and therefore the unauthorised ticket must be in possession of the party, or the mere fact of selling is no offence under the statute. *King vs. Munoz,* 2 *Strange,* 1127.   1 *East. P. Crown,* 453. 1 *Hale,* 660.   2 *Leach.* 890.   2. The indictment should have averred that the ticket was not drawn. 2 *East. P. C.* 601, 600.   To show that the indictment should have set the ticket out, they referred to 1 *Stark. C. Law,* 143, 144. 2 *East. P. C.* 1114.   2 *Maul. and Selw.* 386.   1 *Leach.* 377. *Davy vs. Baker,* 4 *Burr.* 2471.   They referred also to the act of 1809, *ch.* 154.   1826, *ch.* 228. 3 *Barn and Cress,* 183.   1 *Black. Com.* 88.   1 *Chitty C. Law,* 198. The act of 1828, *ch.* 129, *sec.* 16, *and* 1826, *ch.* 67.

The State of Maryland *vs.* Scribner, and State *vs.* Barker.—1830.

ARCHER, J. delivered the opinion of the Court.

We conceive that there cannot be a reasonable doubt about the construction of the act, upon which these indictments are framed. They are founded upon the act of 1826, *ch.* 251, which is as follows: "It shall not be lawful for any person within this State, from and after the passage of this act, to have in possession any ticket, of any lottery, not granted or permitted by this State, with intent to sell, negotiate, or dispose of the same, *to sell, negotiate or advertise, in any way whatever, any such ticket,* or part of a ticket, or in any way or manner, or as an agent, factor, broker, or attorney, for or on behalf of any other person, or persons, to aid, assist, or in any way to have any concern, with any other person in selling any ticket, in any lottery, not granted or authorised by this State." The great object of the Legislature was to prohibit the sale of unauthorised tickets, and for that purpose the law prohibits both the possession of such tickets with intent to sell, and the selling of them. To give such an interpretation to the law, as would make the word "such" refer to the possession of the seller, as part of the description of the ticket, which it should be unlawful to sell, would legalise the selling of tickets by any person, who at the time of sale had not the possession. Such an interpretation would defeat the obvious intent of the law. The phraseology of the law, although its construction (being a criminal law) must be strict, does not demand such an interpretation. By the use of the word " such," it was intended to refer to that which had been previously described,—a ticket in a lottery not granted or permitted—that it should be in possession of the seller is no part of the description of the ticket, and the word " such," does not refer to the possession, and it is not therefore necessary to charge the fact of possession in an indictment which makes the sale the alleged offence.

But we conceive that the lottery ticket, or part of a ticket, should be set out in the indictment. It must be recollected that the sale of all lottery tickets are not prohibited by law;

it is only the sale of such as are not authorised by the State; and it would be proper that the ticket should be set out, that the Court might see whether it was a ticket, the sale of which was authorised, or prohibited. It has been supposed, that there can be no greater reason for setting out the lottery ticket in such cases as these, than there would be to set out a bank note in the case of an indictment for larceny of a bank note; but such cases appeared to stand on peculiar grounds. In all cases of larceny, very particular descriptions of the goods taken, have never been considered necessary; and the description given in the law which creates the offence, has in general been deemed sufficient. If one be indicted for stealing a handkerchief, it will not be necessary to describe either its dimensions, or its colour; or if he be indicted for stealing a piece of cloth, it would not be necessary to give its length, breadth, or colour; and this doctrine is founded in part, probably on the fact, that the prosecutor is not considered as in possession of the article, and is not therefore enabled to give a minute and particular description. But in the case before the Court, the presumption of possession would be the reverse, and there would be no inability, or difficulty, to give a minute description, or to set out the instrument.

But the principal reason upon which this law in relation to indictments for larceny is founded, is because, notwithstanding this general description, it is made certain to the Court, from the face of the indictment, that a crime has been committed, if the facts be true. As in the case put of a larceny of bank notes, it is punishable to steal the note of any bank. The crime therefore appears complete, be it the note of what bank it may—so in the other cases put, a crime appears upon the face of the indictment, if the allegation that a handkerchief, or piece of cloth has been stolen, be true, without any other description, for be its kind what it may, it is equally a felony. But had the statute made it felony to steal the note of a particular bank, it would perhaps, notwithstanding the difficulty in general, of giving

a particular description of any stolen article, have been necessary to have set it out, in order that the Court might see whether it was a note of such a description, that a larceny of it might be committed.

These principles will be found to be applicable to all offences, created by statute, where it does not contain a complete description of the offence. As in cases where the counterfeiting of certain instruments, is made forgery. The instrument is set out that the Court may see whether it is within the statute. So also where frauds by means of false tokens, and false pretences are punishable, as there are false tokens, and false pretences not punishable, it is demanded that the particular tokens and pretences be set out, that the Court may see whether the offence is brought within the statute. And the same doctrines are applicable to indictments, under the statute of 9 *Geo.* 1 *ch.* 22, for sending menacing letters. The letters must be set out. Now applying these principles to the cases before the Court, for any thing that appears to the Court upon the face of these indictments, the tickets there referred to may have been authorised by the State. It is true, that there is an averment that they are unauthorised, but this will not be sufficient. The tickets must be spread out, that the Court may perceive whether they be authorised or not; for if this sweeping averment were received, that which is matter of law, would be given to the determination of the jury.

JUDGMENTS AFFIRMED.